Case number 19-4021, Brent Rusher, et al. v. Outdoor Underwriters Inc, et al. Board argument is not to exceed 15 minutes per side. Mr. Glazier, for the appellant. Thank you. I may have pleased the court. Brad Glazier appearing on behalf of Brent and Jamie Rusher. I have reserved four minutes for rebuttal. This case is about whether certain Lloyds of London syndicates are responsible for payment of a judgment entered against their insured, Mark Thompson. It is an appeal from the district court's order granting summary judgment to both Lloyds of London syndicates. There are two primary issues on appeal. First, whether the terms hunt club, coverage area, and commercial hunting operation are ambiguous. Under Ohio law, that means they are reasonably susceptible of more than one meaning. Second, whether the Mark and Tommy Hunt Club and Ohio Whitetail Adventures are separate entities under the terms of the policies and Ohio law. So there are two policies at issue in this case. We've called them Policy 50 and Policy 68. Policy 50 is a $1 million CGL policy issued to the Quality Deer Management Association and a group of hunt clubs. It is described in the brief as the earth touch policy because it was procured at the request of earth touch when Thompson was negotiating a lease of earth touch land. The application listed 400 acres of property in Ohio but gave no specific boundaries for that property. And the policy application and the policy listed both Ohio Whitetails Adventures and Mark Thompson under the classification of the hunt club being insured. The coverage area was defined in the policy as USA, Puerto Rico, and Canada. There was a policy endorsement that stated the hunt clubs that are named on property, designated, and on file with outdoor underwriters are included as insured. And outdoor underwriters is an agent of Lloyds of London and was instrumental in the acquisition of the two policies that are issued. The land where Brent Rusher was injured was on the property that Thompson was leasing from the Sayoto Land Company. And that property was designated and on file with outdoor underwriters. And that's stated in the policy release that Lloyds attempted to secure or did secure from Mr. Thompson in violation of Ohio law. And that can be found at record 52-4 page ID 1699. Policy 68 is another $1 million commercial general liability policy issued to RMK Timberland and amended to include Sayoto Land Company and other hunt clubs. It also listed Mark Thompson like policy 50 did and also listed the Mark and Tommy Hunt Club as insured. Thompson leased 289.77 acres from Sayoto Land Company and everyone agrees that Brent Rusher was injured when he fell from a tree stand on the acreage described in policy 68. So the law in this case is from Ohio. It is a diversity case as it was the location of the injury and suit was filed in Ohio. All three members of today's panel have written in. Judge White, you wrote ambiguity in an insurance contract is ordinarily interpreted against the insurer and in favor of the insured. That was in the Mosser Construction, Inc. versus Travelers Indemnity Company case found at 430 Fed Appendix 417. The jump site is page 420 and that's a 2011 Sixth Circuit opinion. Judge Clay, you've written policy exclusions must be cleared to combat the general presumption that a claim is included in a policy. That case was Benamed versus Houston Casualty Company, 486 Federal Appendix 508. The jump site is 515 and that is a 2012 Sixth Circuit opinion. Judge Cook, you've written specialized definitions provided in the policy govern notwithstanding their ordinary meaning but ambiguous coverage or exclusion terms will be construed strictly against the insurer and liberally in favor of the insured. That was in Bond Act International, Inc. versus Hartford Accident and Indemnity. I'm going to ask you a question, counsel. You've talked a lot but we haven't gotten a chance to get to the issues yet. I'm just suggesting that we've got it. Thank you, Your Honor. Let's talk first of all about the distinction between a hunt club and a commercial hunting operation. Both policies were marketed and sold as protection for hunt clubs but that term is not defined in either policy nor is the term commercial hunting operation. In fact, the term commercial hunting operation is not included in the policy. The district court relied upon language in the application issued with the policy for the exclusion. We've noted in our primary brief that extrinsic evidence may not be used in favor of the insurer to create an argument that the policy is not ambiguous. Yet the district court concluded that Thompson was operating a commercial hunting operation rejecting the testimony of Mark Thompson that he was operating a hunt club. We would submit that the court erred in that regard. Also, with regard to the term coverage area, the court interpreted the term coverage area to exclude an indemnification obligation for policy 50. That's the Earth Touch policy. Even though the policy defined the term to include the U.S. in a policy endorsement stated that it covered occurrences arising out of hunt club and members' operations on acreage leased to the hunt club by the Quality Deer Management Association landowners and everyone agrees that Seattle Land Company, where Brent Rusher was injured, was a QDMA landowner and that land was on file with Ohio underwriters. So we would submit that the court erred in interpreting the term coverage area. The next issue is whether or not the court erred in making a distinction between the Mark and Tommy Hunt Club and Ohio Whitetail Adventures. Ohio law is clear that a sole proprietorship has no legal identity separate from the individual who owns it. Yet the district court held that policy 68 did not provide coverage because it was issued to Mark and Ohio Whitetail Adventures. This holding was wrong because Mark Thompson was also listed as an insured on the policy and the policy specifically provided that if you are designated in the declarations as an individual, you and your spouse are insured with respect to the conduct of a business of which you are a sole owner. Everyone agrees that Thompson was the sole owner of whether you call it Ohio Whitetail Adventures or the Mark and Tommy Hunt Club and Thompson testified that he secured this hunt club at the urging of the Quality Deer Management Association. So the court should not have distinguished between the Mark and Tommy Hunt Club and Ohio Whitetail Adventures. For these reasons, Brent Rusher and Jamie Rusher request this court to reverse the district court's decision. Counselor, I have a question. I'm hearing you say two things. Is the error that the court distinguished between the two entities or that the court distinguished between Thompson and the Mark and Tommy Hunt Club? Those seem to me to be two different arguments. Because they're both sole. Well, Ohio law recognizes, I believe, the difference between two sole proprietorships. I think it's a different argument to rely on the fact that Thompson himself was an insured. I agree, Your Honor. Those are two separate arguments. But Ohio law, this is the Patterson v. B&M body case, 589 N.E. 2nd, 1306, says that a sole proprietorship has no legal identity separate from the individual who owns it. I'm not aware of any case law in Ohio that says that a sole proprietorship can be separate, that you can have individual sole proprietorships, and those create distinct legal entities. Okay. So, counsel, are you saying that if there was a policy that insured the OWA explicitly and did not insure the Hunt Club and did not insure Mark Thompson individually, that that policy would cover any other sole proprietorship owned by Thompson? Yes. That related to hunting operations. Why would it? Well, let's say the policy didn't confine itself. It's a general liability policy on OWA, and he had five other sole proprietorships. One was a car repair. One was something else. If you're saying there's no, that Ohio says there's no distinction between these entities, and if the policy doesn't say it's confined to hunting activities, then you're saying that all of these other sole proprietorships would be insured? Mr. Glazier? Yes? Mr. Glazier, before you answer Judge White's question, I just want the panel to be aware that his time has been exhausted. Go ahead. Okay. Why don't we maybe stop after this answer, but you can certainly answer. Yes. The answer is that the coverage would include those other sole proprietorships because they're not recognized as a separate entity. So any activities that Mr. Thompson was engaging in as a sole proprietor would be covered by the policy. Okay. And what case are you relying on? Relying upon the Patterson versus V&M body case, and the site for that is 589 Northeast 2nd, 1306. It's a 1992 Ohio Supreme Court decision. Okay. What about Indiana Insurance versus Hardgrove? That case involved completely separate operations, and so one of the operations was covered under the terms of the policy, and the other was not. It's not a situation like this where all of the activities involved involved hunting, and therefore fall within the parameters of the policy. Okay. But counsel, I just said what if one was an auto shop, and you said that all of the sole proprietorships are covered? Well, if it was an auto shop, as it applies to these facts, then this policy only covers hunting operations, and so that's the distinction that I was trying to draw, Your Honor. And was that the distinction in the Indiana Insurance case, the type of activity, not the fact that they were separate operations? To be honest, Your Honor, I don't recall specifically the facts in that case. Okay. I mean, I think your stronger point is that Mark Thompson wasn't insured, too, but let's hear from the other side. I agree. Mr. Fagnelli for the Appalese. Thank you. This is David Fagnelli for Appalese, certain underwriters at Lloyd's London, if it please the Court. There's two policies at issue here, and the threshold issue is whether or not Mr. Thompson and this loss fall within the coverage provided by these two policies. That's the threshold issue in each of these. And I think that the appellant has conflated a couple of issues here in the arguments. First of all, just to briefly address the Patterson v. V&M Auto Body, that has to do with the issue of whether or not an individual that operates a sole proprietorship can use the sole proprietorship as a sort of a corporate shield, or whether the individual operating the sole proprietorship has personal liability for the operations of that sole proprietorship. And that's really the issue in that case. It has nothing to do with what we're talking about here, insurance coverage, and whether or not the activities that give rise to this and we would submit that Mr. Thompson, for the activities that were involved here, does not meet the definition of an insured under either of these policies. Policy 50 is a policy that's issued to the Quality Deer Management Association. Policy number 68 has nothing to do with Quality Deer Management Association. They're two separate policies, two separate things. The way Mr. Thompson attempted to obtain coverage under the Quality Deer Management Association is that he went to lease some property from Earth Touch Marine Metcalf in MacArthur, Ohio, and she required that he apply for insurance. So he asked to be added as an insured, to be insured as a hunt club under the QDMA policy. The QDMA policy lists the insured as Quality Deer Management Association landowners and hunt clubs. It doesn't insure Mr. Thompson. And the way that there's an endorsement that limits the coverage for hunt clubs, and it says that who is an insured under Section 2 is amended to include the hunt club, hunt employees, agents, or employees of the hunt club, but only with respect to their liability arising from the activities and operations of the hunt club within the acreage leased to the hunt club. And the term hunt club shall mean the organization or association leasing land from, but only for its activities or operations within the leased land. The leased land under Policy 50 that Mr. Thompson applied for coverage for is the Earth Touch property, 397 acres in MacArthur, Ohio, not the property where this incident occurred. And so it has nothing to do with this loss because this didn't happen on any of the property that's insured under that policy, under Policy Number 50. It doesn't fit within the definition of an insured loss, and he doesn't qualify as an insured. His name doesn't appear anywhere in the policy. And the only connection between that policy and Mr. Thompson is that he applied for and got a certificate of insurance for 400 acres that belonged to Earth Touch in MacArthur, Ohio, where this loss did not occur. Policy Number 68 is a different policy entirely. That policy, again, does not insure Mr. Thompson, does not insure any of his businesses. His name does not appear anywhere on that policy. And he doesn't fit within the definition of an insured for purposes of this loss. That policy is issued to RMK Timberlands Group. The Seattle Land Company is a member of the Timberlands Group and is listed as an insured on the declarations page of that policy. Mr. Thompson is a representative of a club that he formed, the Mark and Tommy Hunt Club, which he formed in 2008 and had other members lease land from the Seattle Land Company. They were not allowed to use that land for any commercial purposes. It was only to be used for commercial activities. The lease specifically excluded any use for commercial purposes. And the Mark and Tommy Hunt Club qualifies as an insured under the Policy 68 because the named insured includes hunt clubs as licensors, so the licensors, which would be the Seattle Land Company, and hunting clubs as licensees. The hunting club that leased the land where this incident occurred is the Mark and Tommy Hunt Club. It's not Mr. Thompson that leased this land. It's the Mark and Tommy Hunt Club, which is a group that he put together with six or seven other hunters to lease this land from the Seattle Land Company. Now he was the contact person for that hunt club, but it was not to be a commercial enterprise and it was not him personally that was insured under that policy. The activities that give rise to this were a commercial activity involving Ohio Whitetail Adventures, which is a business that he formed in 2008 or 2009. He had a fictitious name registered with the state of Ohio. He wrote his expenses off as losses on his income taxes every year according to his deposition testimony. He had a website that he advertised his business on. He represented that he was an outfitter, and that is the organization that Mr. Rusker made arrangements for a fee originally to be $1,600 for him and $1,600 for his hunting mate to come down to Ohio and hunt on this land and stay on Mr. Rusker's property and hunt. There were 11 other people that were staying on the property at the same time, many of them paying the same fee, according to Thompson, to hunt. This was a business that he was running. There's every indication that it's a business. He indicated that he never told Mr. Rusker anything about the Mark and Tommy Hunt Club. Mr. Rusker knew nothing about the Mark and Tommy Hunt Club before this incident occurred. He was coming down here and paying someone to hunt. Now, as it turned out, he only paid $1,300 because they renegotiated when they came down to Ohio to pay. Can I interrupt you for a second? I want to make sure I understand this. Are you saying that it's understood that hunt clubs are formed and people don't join by paying money and then hunting? I'm confused. Let's say that the paperwork said that by paying this, you're joining the hunt club and you can come back. Are you saying that that would be inconsistent with a hunt club? I think we all know what a club is. A club is generally a non-profit where you split your expenses and pay dues. Someone runs it. It's generally not run for profit. He was running this through his personal checking account, the Ohio Whitetail Adventures. It was a business that he was running through his own personal checking account. He was writing it off as a loss on his business. It wasn't a club. A club is an organization where people join that have a common interest. Certainly, you could join a club by paying a fee for belonging to the club for a period of time to offset the expenses. Mr. Rusker said that he never belonged to a hunt club. He didn't have any indication that he was going to belong to a hunt club. Regardless, it was the Mark and Tommy Hunt Club that leased this property and wasn't insured under the RMK Timberlands Group policy. It wasn't Ohio Whitetail Adventures. In all of Mr. Rusker's dealings, he signed an agreement when he came down here with Ohio Whitetail Adventures to hunt, not with Mark and Tommy Hunt Club. If in fact, I'm just talking about whether there's a question of facts. If by the time Rusker came along, Thompson was no longer doing these full outfitting outings and was simply letting people become members of Mark and Tommy and then you go out on the property and you're on your own. If in fact, he was treating the companies as the same, would there be a question of fact as to whether this transaction was with... Let's say when they first got there, all the papers said Ohio Whitetail, but he says, it's all one company and this is really a membership. You give me the $1,300 and now you're a member and you can come back whenever you want. Would there be a question of fact? Perhaps, except for the fact that there's two separate entities. There's the Mark and Tommy Hunt Club, which the policy number 68 insures and there is policy 50 that doesn't insure the property where the incident occurred. Rusker's testimony is that he never mentioned Mark and Tommy Hunt Club to... I'm sorry, Thompson never mentioned Mark and Tommy Hunt Club to him before this loss occurred. That's the only entity that could arguably be qualified as an insured under the RMK Timberlands policy number 68. Wasn't there some testimony that he said something about, it's all the same or I'm rolling it over into the Hunt Club and that you can come back? He said, well, Rusker said he never said that to him before this loss occurred. He told his hunting partner after the loss had occurred, after the incident had occurred, he told his hunting partner, he told Rusker's hunting partner, Thompson did, that you can come back and hunt another time. But Rusker said that when he was down there, he never had any, he thought that if he wanted to stay more than four days, he'd have to pay more money. And that there was never any mention to him about a Hunt Club. And Thompson gave no definitive testimony that he told anyone about changing from a for-profit organization, the Hunt Club at a later time. But regardless, he had two separate entities, Ohio Whitetail Adventures and the Mark and Tommy Hunt Club. Only the Mark and Tommy Hunt Club is insured under the RMK Timberlands policy number 68. There's no indication that Mark and Tommy Hunt Club had anything to do with the transaction between Thompson and Rusker. Ohio Whitetail Adventures insured under policy 50 for a different piece of property and that's not where this loss occurred. So it's two separate things. One other thing I would like to add, you know, in the plaintiff appellant's briefs in the court of appeals, the plaintiff appellant has suggested that this court should reverse and remand and enter judgment in plaintiff's favor. They never moved for summary judgment in the lower court. They argued that there was an issue of fact. So they're asking for a relief in this court that is different than the relief that they asked for in the trial court. There are also issues related to late notice which we briefed and that is there's a rebuttable presumption when there's late notice and the plaintiffs have done nothing, the appellants have done nothing to rebut the presumption that the late notice prejudiced the insurers. The loss notice occurred 20 months after the loss occurred and that's, there's a presumption that there's prejudice to the insurers and that was not rebutted by the plaintiffs below. If there's no other questions, I would conclude and ask that the court affirm summary judgment in favor of both insurers under both policies on the basis that reasonable binds can only conclude that there's no coverage. They haven't met the burden of proving that Mr. Thompson is entitled to coverage under either of these two policies. All right. Any rebuttal? Mr. Glazer, you have five minutes. Yes. Thank you. I do have some rebuttal remarks. First of all, with regard to the filings in the district court, it's true that the rushers did not move for summary judgment, although they did request entry of summary judgment under Rule 56-I, which allows the court to enter summary judgment for either side and allows a party to make a request that summary judgment should enter in their favor, even if they did not formally file a motion. We also joined in a motion. Counsel, would you say that again? What is Rule 56-I and where would we find that? You would find that in the brief in opposition to the summary judgment motion that was filed by Boys of London. It's in a response of pleading, right? It's in a response of pleading. Yes. It wasn't moved for, right? Correct. We joined in a motion for summary judgment that was filed by Holland Hospital and in our opposition brief, we requested summary judgment in the conclusion portion of that brief. Is that in this case? Yes. Is the hospital a dismissed party? I'm sorry, I missed that. The hospital was a dismissed party. Their motion for summary judgment was denied and they are not a party to this appeal. It has, so you didn't move for, with respect to these insurers? Yes. So Holland Hospital filed a motion with respect to these insurers. We joined in that motion and then we also requested entry of judgment in our opposition to Lloyd's motion. All right. We'll look for that. Thank you. I want to address in the time remaining the issue as it relates to who is covered by the insurance policy because Lloyd's of London Council suggests that Mr. Thompson was not identified specifically in the policies. That's just not true. With regard to policy number 50, he was identified directly below the name of the Hunt Club and he was also identified in policy number 68 and that's shown on page ID 1714. If we look at the language of the policy itself, it says if you are designated in the declarations as an individual, you and your spouse are insured with respect to the conduct of a business of which you're a sole owner. So if Mr. Thompson had created separate LLCs or corporations, then I believe that Lloyd's would have an argument to make in that regard, but that's not the circumstances that occurred. In addition, the testimony of Mr. Thompson is that he was running this operation as a Hunt Club, notwithstanding paperwork that was signed that indicated that Ohio Whitetails Adventures was also in existence at that point. As noted I think by Judge White, he was in the process and did roll over all of this Ohio Whitetails Adventure business into his new venture, which was Mark and Tommy Hunt Club, a sole proprietorship, and as such covered his business regardless of the name that was attached to it. Are there any other questions for me? Apparently not, and you're not required to use your entire four minutes. Judge Clay, his time is up as well, just now. Oh, okay, good. All right, okay. All right, the case is submitted and you may call the next case.